And could you just, before you start your time, explain to me or the court what you want to show us? Certainly, and they may not help you at all. Basically, the first one is just the part, portions of the complaint filed by the plaintiff and portions of the answer filed by Menard. Which is the subject of count four, which is the subject of this appeal. And then the second one is merely a blow-up of the trial court's docket entry or in a rule on the motion to dismiss. Okay, so these are part of the record, but if we can't see them, you may have to move them closer. All right, whenever you're ready, you may proceed. Thank you. May it please the court, counsel, my name is Chris Custer, and I'm with the Taylor Law Offices in Effingham, and I am here with my co-counsel, Mr. Will Kelly, corporate counsel with Menard's. He was the trial attorney, and I am assisting Mr. Kelly with the appeal and Menard's with the appeal. Your honors, as you already know, the incident or period of time that we're dealing with is about 60 days. On September 5, 2015, the plaintiff went to the Marion Menard store to do some shopping. His friend, Mr. Wall, attempted to purchase items in two separate transactions. The first transaction went through with the card. For whatever reason, the second transaction with the card was not going through. They tried several times. When they were unsuccessful with the second transaction and those items, the cashier went to go get the head cashier for assistance. During that same time, Mr. Wall asked the plaintiff, do you mind going ahead and taking some of these items to the car? And that's what happened. The head cashier couldn't help but ultimately voided the second transaction, and apparently those items were returned. After everyone left, the head cashier believed she saw what appeared to be a retail theft, not an uncommon occurrence, unfortunately, at any Menard's. So the head cashier reported to the folks at Menard's. An investigation was done, and ultimately Menard's did report a potential theft to the Williamson County Police and Officer Morse. Officer Morse thereafter... No, he actually reported a theft, not a potential theft. Did he say, oh, there's been a potential theft at my store? I think he said, we think something happened. I don't know whether he said potential or not. That's not in the evidence. I don't believe so. But in any event, he reported what he saw to the police like a citizen would do. Thereafter, after Officer Morse came to Menard's store within a couple of weeks later, I think, Menard's did not know what would happen, if anything. Menard's did not know if any charges were filed. Approximately in late October, early November 2015, the plaintiff went to the Menard's store with a receipt. He spoke to the Menard's managers, said, listen, I have been charged with retail theft. I have a receipt. General Manager Melbrecht looked at that. When compared the receipt to the surveillance video and concluded for himself at that time that, in fact, no theft or potential theft had occurred. So he immediately reported that to the state's attorney. And as I understand it, on November 5, 2015, approximately 60 days after the initial shopping trip, the charges were dismissed. I have a couple of questions, though, about the way you presented some of the factual part of it. You said that the employee alerted, I guess, a supervisor to a potential theft as if any citizen would do. This is not any citizen. This is an employee of the business. And you have to admit there is a different duty than just a citizen would have, I take it. And would you agree that duty would include after having reported a potential theft to determine and reporting it to the police to determine whether or not any action was taken on that one way or another? I believe anyone, whether they're a citizen or an employee or a general manager of a store, any store, should be very careful before reporting anything to the authorities. Do you think there's the same duty that if I went in as a shopper and saw somebody that I thought was putting an item in their pocket and wasn't going to pay for it and I alerted the store and then they took action and called the police, do you think I'd have a duty to follow up on that as a shopper and say, I want to know what happened to those charges? Did they charge him? Was there actually a theft? I do not believe that a citizen who is a co-patron would have a duty to follow up. And if the question is, and I think I'm understanding your question, was there some additional duties or things or conduct that should have been engaged in by the Menards folks to go above and beyond to make sure before you report something to be investigated, I don't know under the law whether there is a heightened or different duty. I think we should all be careful before we accuse someone. And I can tell you right now, Menards regrets this ever happened. Only because there's a lawsuit. No, I respectfully disagree. No one likes for these things to happen. And when Mr. Melbrecht, approximately two months afterwards, found this out, he immediately called them and they were, those charges were dismissed. And again, we didn't even know Mr. Madden's name until he came in in late October, early November with the receipt. You know, that's the one thing that confused me, is it was Mr. Wall who was having the trouble. So how did Mr. Madden get involved? I mean, you, Menards, didn't even know the names of the individuals who were there. But it would seem to me that Mr. Wall's credit card was the one. So what was actually turned over by Menards? And I suspect Mr. Stone was there. He'll be able to speak to this and perhaps Mr. Kelly will whisper in my ear. But it's my understanding that they did look at surveillance video and they did look at tapes. And I think there was some confusion because on the surveillance video, when they had to void that second transaction, they thought that was a receipt and they didn't know it was a first transaction. It was the perfect storm, unfortunately. And again, I will, and Menards does regret that this happened. But it would have been, if these surveillance videos were reviewed, as you said both in your brief as well, it would have been Mr. Menards who would have been seen taking these items to the car, so to speak, while Mr. Wall was waiting for the head cashier or whatever was going on in the store. Right? You're exactly right. As I understand it, and I'm sure they'll correct me if I'm wrong, I believe they were using Mr. Wall's credit card. And I don't know that Mr. Madden, the plaintiff's name, appeared on anything. But again, based upon what they saw, they thought something had happened. Because he's taking things out in a car or whatever. Correct. He's leaving the store with items. Correct. On what appeared to be one transaction that was pointed. I'm still trying to clarify something. You're saying they didn't even know their names? They didn't have an internal report on who they alerted the police to investigate and charge? I believe they would have had the name of the friend, the plaintiff's friend, Mr. Wall. But I'm not certain whether, I don't believe they had Mr. Madden's name because he was not part of any transactions, as I understand it. So there was a lot of things that had to happen for this to occur. But, you know, so these things did happen. Charges dismissed 60 days later. About a week later, they filed, 11 days later, after the charges were dropped, they filed a complaint. I'm getting confused. Okay, Madden is the one that carried the merchandise out of the store? Right. Wall is the one that had the credit card? My understanding. Okay, why do you have to have a receipt to show you didn't steal something that you bought when you have dozens of stores and the credit card would record what you bought? So why do you have to come back in with a receipt? Why, oh, that's not stolen stuff. Duh. You're done. As I understand it, and I don't think this is part of the record, but there was some conversation with the plaintiff in the parking lot where something was not clarified. There was a suggestion that an expletive was exchanged. I think they said no. So I think there was an attempt to get to the heart of this, but it did not happen. Well, first of all, if the stuff in the parking lot that everybody knows, including the cashier, they would pay for it, right, with the credit card? Or did he let them get out of the store with stuff that was not on the credit card? I think I understand your question now. I believe the stuff that was taken was part of the first transaction. Which was paid for. Correct. The second transaction is everything that wasn't in the first transaction. In other words, it's got some items, and they're back, they're still in the store, and they never left. Well, keep in mind, they handled the first transaction, and everything is still there at the register. Right. Now they're trying the second transaction, and the items, as I understand, are commingled. So when the head cashier, they're trying to fix it, and the head cashier can't fix it, that's when they take the items which are commingled with the first transaction. So then there are some items that aren't paid for in the lot? That's what I'm trying to get to. I don't believe that there were any items not paid for in the lot. Okay. I think where the confusion lies, Justice Welch, is, and I don't believe the head cashier probably even was aware that there was a first transaction that was successful. Which is another part of the confusion. But I hope that the court will agree that there was no, Menard had no intention whatsoever of picking on this plaintiff. And again, I will say it again, Menard is sorry that even for 60 days this happened. It shouldn't happen to anyone. I totally agree with that. With regard to the bench trial that was then conducted after pleadings, as you know, the court entered a docket entry on count four and count four only, and in his docket entry he indicated that they pled and proved a case sounding in slander per se, and or intentional infliction of emotional distress. And if you go back and look at count four, it's based upon a pleading. It's based upon an attorney's pleading. Specifically... An unverified plea. Correct. Yes. Paragraph 7. John Men did not commit the crime of retail theft as alleged in the criminal information. Mr. Kelly's unverified answer, Menard is without information sufficient as to sustain a belief as to the allegations contained in paragraph 7. Therefore, tonight's sentence. At that time, neither Mr. Kelly nor anyone from Menard's had any idea what was in that criminal information. We had insufficient knowledge of what existed in that criminal information. So that's why we said we don't know what's in that criminal information. The same is true with paragraph 8, which talks about the officer's affidavit of probable cause. John Men did not commit the acts described by Mary Police Officer Scott Moore in his affidavit of probable cause. We had never seen the affidavit of probable cause. We were not involved in the state's or the police officer's investigation. So we appropriately, in our unverified answer, said we don't have sufficient information. We don't know what is in the probable cause affidavit. Wasn't there a timing issue with respect to these responses that it was in fact also after the fact when they had been advised that there was no theft and continued with that response? Absolutely. Absolutely. At the time Mr. Kelly filed his response, the charges were dropped. We knew that nothing had happened. Been stolen. Correct. But again, I think, and we have to be very careful with our pleadings. I completely understand that. But we didn't know what was in the criminal information. It charges the crime of retail theft. Didn't you absolutely know that there was no crime of retail theft that had been committed at that point? I believe the answer would be yes. Okay. We certainly knew that. But again, there was, we don't know what was in the criminal information. It could have had 10 additional items that we were completely unaware of. So you could have stolen more things that were in there that you didn't know about. Is that what you're saying? That's not, I do not at all mean to suggest that this might have stolen anything else or stolen anything for that matter. But I think from a purely pleading standpoint, if we don't know what's in there, we have to say we have insufficient knowledge. And when you put this in the context of a slander case or an intentional infliction case, an attorney's unverified pleading, and I'll talk about the absolute privilege in a moment, but that does not rise to the level. And I think, in my opinion, there's no one that looks at these answers to amended pleadings. So privilege, is it absolutely privileged? The answer is yes. And I think Mr. Stone would suggest yes, it is privileged. Mr. Stone suggests that it could have been privileged, but we waived it by not filing an affirmative defense under 613 of the code. I will say this. We did not file an affirmative defense of absolute privilege after we filed a motion to dismiss. We did not file an affirmative defense of the statute of limitations in this case. I believe we waived the statute of limitations issue on the one-year period. But the reason I don't believe we have waived the absolute privilege with regard to that affirmative defense is because, as we all know, 613 is intended to eliminate surprise, eliminate gotcha pleadings like we talked about in the last case. So one of the options is to file a 613 affirmative defense. Another option, and I think a better option in a case like this, and this is what Menard's utilized, is a 619 motion saying this is eliminated by the privilege. And on March 7, 2016, the court granted Menard's motion to dismiss with prejudice, indicating that we were entitled to the defense of absolute privilege. And the reason I blew this up, and you probably can't see it, and it's probably a complete waste of time, but it says in the court's opinion, current Elmwood law, which this court is obligated to follow, provides absolute privilege. It talks about statements to law enforcement officers. The motion to dismiss with prejudice pursuant to 619 is granted. I think this next part is important, too. The plaintiff's motion to file an amendment to the complaint is granted. The court's ruling dismissing the defamation claim asserted in the original complaint pursuant to 619 remains unchanged. Remains unchanged. So I believe this becomes law in the case. That absolute privilege was raised. It was granted. So in a perfect world, in a felt-and-suspender world, would it be better to file, in addition to already having this in your back pocket, an affirmative defense raising it again, no harm, no foul? Yes. But if you don't, is it a waiver?  And I think that is consistent with 619D of the code, which basically says, the raising of any of the foregoing matters by motion under this section does not preclude the raising of them subsequently in an answer. The next part is the important part. Unless the court has disposed of the motion on its merit. The court disposed of this motion raising absolute privilege on its merit. So I do not believe there was a waiver of absolute privilege. I do believe. I do believe we waived the one-year statute of limitations. Now, again, because the court chose its words, slander per se and or intentional infliction of emotional distress in count four, we talk about 603, how you're supposed to plead these counts separately, not together. We've all, you've heard probably hundreds of IIED claims in one fashion or another. I've been on both sides of these. I know that it's difficult. I know it's tough. It's supposed to be tough to be able to prove an intentional infliction of emotional distress claim. You'll have some time afterwards. Thank you, Justices. Good morning. May it please the court, counsel. This is a case of no good deed goes unpunished. Mr. Madden went to Menards with a friend, Mr. Wall. Mr. Madden had a truck. Mr. Wall did not have a truck. The underlying story is that Mr. Wall lives with a disabled brother, and they split expenses. So they were refurbishing a bathroom. They bought half the material on Mr. Wall's credit card, the other half they attempted on the brother's credit card. These were not commingled items. If you see the video, they go through. There's glue and there's strips. How did they get Mr. Madden's name, John Madden? They reported his license plate to the police. Was that the extent of Menards' involvement with Mr. Menard? Mr. Madden? I'm sorry. Yes, it's complicated. Did the actions of Menards in reporting Madden's license plate, was that the extent of their knowledge of John Madden? As an individual named person, yes. They didn't know who he was. They didn't know who he was, and so how is it that you can have an intentional infliction of emotional distress if you don't even know who you're imposing the intent on? Well, let me answer it this way, because I disagree with Judge Blyer in his docket entry, and we're not here appealing docket entries. We're here appealing a judgment. The theory of my case was negligence. The theory of my case was not intentional infliction of emotional distress. You have a cross appeal. I'm sorry? You have a cross appeal, don't you? I do, but what I would say about that is with regard to count four, it is not intentional infliction of emotional distress. I never intended that to be the pleading. Plaintiffs control their lawsuits. We get to determine what we sue them. Where I part company with Judge Blyer is Judge Blyer redefined my lawsuits in his docket entry, but we're here on a judgment that he signed. What's my theory? Negligent investigation. What happened in this case was there was a suspicion because of the confusion at the cash register. There was a suspicion that someone left the store with unpaid merchandise. The general manager and the assistant general manager says that in that circumstance, you do two things. You check video surveillance and you check, as Justice Welch says, the purchase data. It's a Labor Day weekend. It's busy. They don't even undertake an investigation right away. They assign it to the manager of the electrical department or the plumbing department, a guy named Brian Millett. Brian Millett says that he looks at the video surveillance. Brian Millett says, I then ask someone to tell me whether this merchandise was purchased, because Brian Millett admits, I can't even check the data. So they assign the task of investigating whether John Madden stole something to someone who can't even complete the investigation. What Mr. Millett says under oath is that, well, I asked a woman who could look at the data, and she told me all transactions were void. He testified to that under oath. It can't be true. The reason we know it isn't true is because we have a receipt. The reason we know it's not true is because they eventually judicially admitted that the video surveillance shows that there was a purchase. So does the purchase data. Mr. Stone, that shows purchase data from Mr. Wall. Yes. My question to you is, how does judge, this is the order that we're dealing with. As to count four, it is the court's finding that a valid cause of action for slander per se and or intentional infliction of emotional distress was both pled and proven. Right. So according to the court, your count four contained two, potentially two, causes of action because he said you proved it. And then he awarded you $20,000 for actual damages and presumed damages, which I don't understand what that is. Okay. So my question is intentional infliction of emotional distress as set forth in his order, which is the one that's being appealed. I disagree with that. You disagree that's being appealed? Yes, I do. We don't appeal docket entries. We appeal docket entries. This is the order of, this is the order of, what do you believe is the judgment of the court? The judgment is what I've attached to my appendix because. Well, answer me, please. As the court knows. What is, what do you believe is the judgment of the court? Did you get $20,000? Menards was sued in negligence. They, there was a $20,000 award for negligence that caused harm, the harm being harmed to his reputation. That's what I sued on. And your client didn't even testify. It's because the harm to his reputation for being accused of being a thief is presumed. That's why I pled damages consistent with slander per se. I didn't plead slander per se. Okay. Count two says negligent investigation. But count two was not mentioned by Justice, Judge Bleyer. Judge, this court does not review docket entries. It reviews judgments. This court reviews findings by a court regardless of where they are contained in the record. Do you agree with that? Not in this case, because in this case, Judge Bleyer asked for a judgment to be prepared. A judgment was prepared. He signed that judgment. Menards, in their infinite wisdom, didn't challenge the form of the judgment. The judgment is in favor of Mr. Madden and against Menards. It is not count specific, nor is it cause of action specific. So we should ignore the findings of Judge Bleyer. You should, and this is why. Because on review, what this court should do, pursuant to Keck and the citations that I have in my brief, what this court should do is determine whether the underlying facts of law support a judgment in favor of Mr. Madden and against Menards. This is what I sued on, Your Honor. I sued on negligent investigation. Count two, the title of the count is negligent investigation. What I set forth was, and they judicially admitted that they had a duty to exercise reasonable care to investigate whether their suspicion of theft was true or not true. The general manager and assistant general manager judicially admitted they had to do two things in order to satisfy that duty. Those two things are to check video surveillance and data purchase. They didn't do those things. In consequence of not doing the things they judicially admitted they should do, my client was accused officially of theft, and his name remains in the public record as being accused of being a thief. Why did that happen? The public record was created by a law enforcement agency, not Menards. Correct. Yes, the police officer testified on the witness stand that he would not have taken the action that he took in filing the affidavit for probable cause if it weren't for what Menards told him happened. The police officer testified. Excuse me. I'm sorry. The state's attorney is the one who has the discretion on whether to file a charge, right? Of course. And then the public record is created once the state's attorney is the one who issues the public record. That's true. So as I understand this, what Menards did is give a license plate number to law enforcement as it relates to your client. No, they did much more than that. Okay, I understand all the investigation and all of that, but the focus at that time was on a Mr. Wall. Because they rarely knew his name because there was a credit card transaction that went through. Judge, we're at cross purposes. I guess I don't understand. Okay, let me shift gears on you a second because I want to ask you about the – regardless of whether it's negligence or a potential infliction is based upon the answer to paragraph seven and eight. Is that not true? Count four – Judge Alderman, I was too clever by half. Okay, I filed – I first filed count one, which was defamation. I was thrown out for absolute privilege. In the context of those arguments, there was a case cited by Menards that said that you could, in fact, be sued if you were in Menards' position if you negligently investigated. That's where I got the idea. I got the idea from a case they cited. So I filed count two. Count two was negligent investigation. You had a duty. You breached your duty. In consequence to that, my client suffered harm to his reputation. That was my cause of action. I take – excuse me. I take testimony. When I take testimony, they admit he didn't steal anything. And yet I had a pleading on file that denied that he didn't steal anything. And – Excuse me. You're a well seasoned lawyer. I mean, you deal with these kinds of answers all the time where you see insufficiency with the evidence. Well, we have the defense lawyers file the same kind of – we have insufficient evidence to admit or deny. You've seen that thousands of times. I have. You have created a cause of action based on an unverified statement by an attorney where they're saying they don't know what's in the information or they don't know what's in the affidavit of a police officer. Had discovery been commenced and did they have that information at the time they answered that? Yes. So the record's going to show that the answers were wrong because they had the information through discovery. I think so. I think the timing of it is I filed count one. It's dismissed. Then we have count two, which was the negligent investigation. I filed count three and four after we've taken depositions and exchanged discovery. I have people testifying under oath that they know he didn't steal. And so where I say I was too clever by half, count three, this whole thing started – I just tried to get them to expunge this guy's record. That's the whole way it started. Well, regardless of how it started. We need to figure out where it's at right now. Where it's at right now, Your Honor, and, you know, this is, you know, horrible law of appeal. The rationale of the lower court is not relevant if the decision of the lower court is correct. There is a cause of action plead for negligence. There is. That negligence, the result of that negligence was harm to reputation. It's presumed harm because it's like slander per se. The only way you get presumed harm is if you plead defamation per se. In negligent infliction, don't you need to prove damages, specific damages? No. You don't? No, because in slander per se, we don't presume the harm because how it comes about. No, negligent infliction of emotional distress is count two. I did plead that cause of action. I think you plead in count two. I'm sorry. Negligent investigation, which led to harm to reputation. And you're saying that doesn't require a proof of specific damages in count two? No, because the harm is absolutely the same as in slander per se. The law does not presume harm because of how it comes about. The law presumes that if you are said to be a thief and you're not, that there is presumed harm to your reputation. That's the law. That is the law on slander per se, which is count four. I'm not sure. I mean, you're laughing at me, but I'm not. No, I'm not laughing. I'm not laughing at you. I find it incredible that you would laugh about these. These are serious issues. Yeah. Judge, please don't think I'm laughing at you. I'm laughing at my own inability to articulate what I'm trying to say to this court. I can't articulate it. I don't know how to do it any better. But please, and you know me well enough, I would not mock you or this court. Not even close. But I would just say to you that, you know, the frustrating part for me is I was told by a judge what my causes of action were, and I didn't plead them. I pled negligent investigation. That's count two. Count four adopted the first 35 paragraphs of count two, where I said, where I started to admit that I was too clever by half, is that I viewed count four as a continuation of the harm, because in their pleadings, they further denied that he was innocent. And I took the position, you know he's innocent, and yet you deny that he's innocent. And that's in a public record. And so he's already suffering harm to his reputation. You have a chance to cure it, and you still don't. And so where count four, where I have to say I'm too clever by half, I was just trying to show unto the court that the harm that was happening to Mr. Madden was continuing because of the public sphere. They won't even admit that he's innocent when they know he is. But the whole case is negligent investigation. They have a duty. They judicially admitted that there was a duty. Because I alleged that there was a duty, they admitted it. The people testified what they had to do in order to comply with that duty, they breached it. The proximate cause of that breach is harm to his reputation. That's my whole case. And if that's not what I proved underneath, then I lose. And I don't care what Judge Bleier says or how he articulated it. If in this court, this court were to review the evidence underneath in the record, and they find that there was a duty, a breach of that duty, and harm to my client's reputation that is the same as in slander per se. Because we don't ask how the slander came about, just whether it came about. Then what I'm telling to the court is that this case can be affirmed because it is supported by law and fact. Everything Judge Bleier says is dictum. It's just a docket entry. If he hadn't asked for a judgment, I guess we'd have a different argument. But he asked for a judgment to begin. We didn't appeal from a docket entry. We appealed from a judgment that he signed weeks later. Yes, I see it. I have it in front of me. And the way evidently you wrote it, from what you just said, it doesn't say what count was considered. True. Which on review, I think what the court does is look at the record, look at the pleadings, and see if there is a cause of action supported by the facts and the law. And I have articulated for you, I believe, a cause of action that is supported by the facts and the law. And I do think everyone here would agree that if you're set in the public sphere to be a thief, there is presumed harm to your reputation. Did I have to put him on the witness stand to say that my reputation was harmed because it was the result of a negligent investigation? When if someone had done the exact same thing to him in the private sphere, he wouldn't have had to say a word? The same thing is the harm. Being accused of being a thief is the harm. So I think, you know, what we're here to decide, pursuant to the Keck precedent, is was there a duty? There was. Was there a breach? There was. Was there a proximate cause to harm? There was. What was the harm? Harm to his reputation, I'd ask the court to confirm. Thank you very much, Mr. Stone. Thank you. Okay. Thank you, Justice. Did you say it's Custer? Custer. Custer. Custer, because it's Custer. But spelled terribly wrong. No, I'm not making it up. It's just I wanted to pronounce it right. Yes. Believe me, otherwise it's Custer or Keister or something else. Well, we probably pronounce it Keister around here, too. Very, very, very quickly. We are here about count four, the documentary which is absolutely what we're looking at. Looking at Mr. Stone's pleading count four, he says in his prayerful relief, per se slander, the words negligence, negligence is not there. What count are you referring to? Pardon me? What count? Count four. Let's talk about his count two. Count two was for negligent infliction of emotional distress, and I know Mr. Stone may not want to hear this, but the trial court addressed that in his documentary, too, and specifically said in the court's opinion, count two of the Second Amendment to complain attempts to recover damages for the negligent infliction of emotional distress under the facts of this case and pursuant to the Schweiss v. Chase home case, no such damages are recoverable. The court ruled on his negligence count. Count four was a slander count. What's the reference in the record to that? C-9. Thank you. Because as I read the complaint, I thought his count two, the amended complaint, the count two was negligent infliction of emotional distress as well. Exactly right. Mr. Kelly did whisper into my ear when I returned the counsel table, and he said absolutely the only evidence that they had was the license plate. They did not have the name, and that's what was reported to the police. Mr. Kelly got deep red, and he unequivocally whispered to the point where you could probably hear, is that absolutely unequivocally he did not, Menard did not have that information in that affidavit at the time that he filed his answer suggesting he had insufficient information. So that was going to be my question to you. Had discovery been conducted to the point where Menard did have that information? Unequivocally no. Okay. And again. Where would you respond to Mr. Stone's argument that this court would not review a docket entry? If you accept his argument, then we would not be bound by the docket entry you just read on count two. The way I would respond, Justice, is that that would be like blindfolding you and not allowing you to look at the rationale and the analysis of the trial court, which is the most important item that we need to look at. The judgment is a technical nicety, a legal nicety that says judgment entered, but we all look to the docket entry, the order of the findings of fact, the findings of law, of course we look to the docket entry. That is the most important, and we certainly could not ignore that. It would be like being blindfolded. Mr. Custer, can I clarify something for myself? Certainly. I have written down that Menard filed his answer to the second amended complaint in September 27 of 17. That's correct. Does that sound right? Yes. Because at that time you still had not viewed the video and were still unaware as to whether or not a theft had occurred. Because I am under the understanding that you had then completed your investigation and did believe that in fact no theft had occurred. I think that's absolutely right. We did not believe, we reported a license fraud. So what you just said before, though, was that you did not know whether or not a theft had occurred. No, I think what I attempted or hoped to say before is that when we filed this answer, it says You don't know what the further information contained. No, we don't know what the actual criminal proceeding contained, what the information contained or what the affidavit contained. Although the whole thing is premised on a retail theft having occurred and you determine that in fact it had occurred, but you're hanging your hat on as alleged in the information, the criminal information. No, I think as you well know and you certainly did in practice, we look at the allegations and answer the allegations that are contained therein. We're not attempting to answer or reply to the case as a whole. We're not trying to say whether the state should or should not have filed something. We're not trying to say that at all. We're just saying, did we know it was in the criminal information? Absolutely not. Did we know it was in the affidavit? Absolutely not. So if those things don't say, isn't it true that the plaintiff did not commit retail theft, it doesn't say that at all. It does say that the query was as to whether the defendant committed retail theft. It does say that. I would just say paragraph 7-8 says that they did not commit the crime of retail theft as alleged in criminal information. Okay. Exactly right. Thank you for your time, Justices. All right. Thank you both for your arguments. The matter will be taken under advisement and we'll issue an order.